# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILLIE G. CASE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   Case No. CIV-07-0233-F |
| | ) |
| OKLAHOMA CITY INDEPENDENT | ) |
| SCHOOL DISTRICT NO. 89 OF | ) |
| OKLAHOMA COUNTY, also known | ) |
| as OKLAHOMA CITY PUBLIC | ) |
| SCHOOL DISTRICT, a political | ) |
| subdivision of the State of Oklahoma, | ) |
| | ) |
|     Defendant. | ) |

## ORDER

"Defendant's Motion for Summary Judgment," filed May 1, 2008, is before the court. (Doc. no. 26.) Plaintiff has responded by objecting, and no reply brief has been filed. Accordingly, the motion is ready for determination.

This action involves race discrimination and retaliation claims brought under 42 U.S.C. § 2000e et seq. (Title VII). Plaintiff, Mr. Willie G. Case, was formerly a teacher at Douglass High School in the Oklahoma City Independent School District. Prior to the 2005-2006 school year, plaintiff taught certain industrial arts and vocational classes, including but not limited to woodworking and metal-working, at Douglass.[1] At the beginning of the 2005-2006 school year, plaintiff was reassigned to a position teaching science to middle school students, after courses taught by

---

[1]Plaintiff contends he taught "industrial arts/vocational education which included classes in wood, woodworking, furniture making, welding and auto assistance." He testified that welding was sometimes called "metal-working." (Doc. no 29, response to defendant's Undisputed Material Fact No. 2, and Ex. 1, depo. at p. 13.) The court takes these facts as established for purposes of this order.

plaintiff in woodworking and metal-working were eliminated, and after plaintiff was not selected for the remaining position at Douglass teaching trade and industrial classes. These events form the basis of plaintiff's race discrimination claim. The complaint alleges that: "Plaintiff's race was a significant factor in the adverse employment action of promoting a white male with lesser qualifications to the newly created position at Douglass High School and demoting plaintiff to the Science teacher's position that pays approximately $4,000 per year less." (Doc. no. 18, ¶ 19.)[2] With respect to the retaliation claim, plaintiff alleges that after he filed his charge of discrimination with the Equal Employment Opportunity Commission (EEOC), the District left him with only the keys to his classroom and refused to allow him to remove person items from the welding and wood shop. Plaintiff also alleges retaliation with respect to the manner in which his evaluations were conducted. (Doc. no. 18, ¶ 24.)

Standards

Under Rule 56(c), Fed. R. Civ. P., summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the

---

[2]The briefing suggests the surviving trade and industrial education position was not a "newly created position." Defendant contends Mr. Loudermilk simply continued to teach automotive services classes, before and after the beginning of the 2005-2006 school year. The issue of whether the remaining position was new is not critical to the determinations made in this order; this order avoids that nomenclature, however.

light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant. United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

## McDonnell-Douglas Framework

Both parties analyze this case under the indirect or circumstantial evidence burden-shifting framework of McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). The court concurs that this is the correct approach.[3] Under McDonnell, the plaintiff carries the initial burden of establishing a *prima facie* case of racial discrimination. *Id*. at 802. Once the plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate some legitimate, non-discriminatory reason for the adverse employment action. *Id*. at 802. If the defendant makes this showing, the burden then shifts back to the plaintiff to show that the defendant's proffered justification is pretextual. *Id*. at 804.

## The Race Discrimination Claim

As previously stated, at the beginning of the 2005-2006 school year, certain industrial arts classes such as woodworking and metal-working that had previously been taught by plaintiff at Douglass High School were eliminated from the curriculum at that school. Mr. Johnnie Loudermilk, a white male who had been teaching auto

---

[3]Plaintiff alleges that Susan Staples, a white female employed by the defendant as the Director of Career and Technology Education, stated that "Willie Case is not the type of person we want to be in vocational," and that "Douglass High School needed new blood." Doc. no. 26, ¶ 23. The remarks do not directly implicate plaintiff's race, however, and there is no direct evidence of discrimination.

mechanics classes at Douglass, was assigned to the single surviving trade and industrial education teaching position which then remained at Douglass. The remaining position was to teach automotive services, and Mr. Loudermilk had been teaching automotive services at Douglass. Plaintiff contends he was more qualified than Mr. Loudermilk for the surviving trade and industrial education teaching position, but that he was denied that position because of his race, African-American. Because plaintiff was not assigned to the sought-after trade and industrial education position at the beginning of the 2005-2006 school year, he was assigned, instead, to teach science to middle school students.

In his response brief, plaintiff summarizes his race discrimination claim as follows.

> [I]t is undisputed that two vocational teachers were up for one (1) remaining position in the industrial arts/vocational department after the new building was constructed [at Douglass as a part of the "Maps for Kids" project]. Therefore, [the] District had to choose which path it wanted to take – woodworking, welding and some automotive classes or strictly automotive services. Put another way for the purposes of this lawsuit, District chose to retain the Caucasian teacher in the vocation department instead of the African-American teacher.
>
> <u>This is the decision which led to Case's transfer to junior high science</u>, and it is this choice that Case contends was motivated by Case's race.

(Doc. no. 29, p. 14, emphasis added.)

Given the nature of this claim, a showing that plaintiff was qualified for the sought-after trade and industrial education job is an essential element of plaintiff's *prima facie* race discrimination case.[4] *See*, <u>Texas Department of Community Affairs</u>

---

[4] Plaintiff's briefing declines to refer to this action as a failure to promote case. Based on the circumstances of this particular action, a showing that plaintiff was qualified for the job he sought is an element of his *prima facie* case, whether his case is viewed as a discriminatory failure to promote case, a transfer case, a demotion case, or an unfair treatment case.

v. Burdine, 450 U.S. 248, 253-54 (1981) (elements of *prima facie* case for discriminatory failure to promote include that plaintiff was qualified for the available position she sought, citing McDonnell Douglas). Defendant argues that plaintiff has not shown that he was qualified for the remaining trade and industrial education job in question.[5]

As to plaintiff's qualifications to teach in the sought-after trade and industrial education position at Douglass, the court finds that the following facts are established by undisputed evidence.

The job plaintiff sought beginning in school year 2005-2006 was funded by the Oklahoma Department of Career and Technology Education (ODCTE). (Doc. no. 26, defendant's Undisputed Material Fact "UMF" Nos. 13-18, generally.) ODCTE positions require a teacher to meet certain requirements, including passing an occupational competency examination approved by the ODCTE's Trade and Industrial Division. (UMF No. 16.) The specific program in which plaintiff sought to teach during the 2005-2006 school year at Douglass was an ODCTE automotive service technology program. (UMF No. 17.) To teach in the automotive service program funded by ODCTE at Douglass beginning in the 2005-2006 school year, certification for Trade and Industrial Education (Code 7509) was required. (UMF No. 17.) Plaintiff never took the exam and never obtained the ODCTE certification in the area of Trade and Industrial Education that would have allowed him to teach in the position he sought. (UMF No. 18.)

More specifically, in August of 2005, plaintiff met with Orville Manuel, the Coordinator of Trade and Industrial Education for the ODCTE, about renewing his

---

[5]Defendant also argues that plaintiff has not cited evidence to support a *prima facie* case of race discrimination because assignment to the science teaching position was not a materially adverse action. The court rejects this argument as the basis for summary judgment because it presents genuine issues of material fact.

certification and about the process to obtain the appropriate certification required for him to teach in ODCTE program. (UMF No. 18.) At that time, Mr. Manual explained the process to plaintiff, including the fact that plaintiff would have to take a test. Plaintiff did not proceed with certification. (UMF No. 18.) As of August, 2005, plaintiff was not certified to teach in ODCTE's Trade and Industrial Education area. (UMF Nos. 18, 20, and Ex. no. 6, aff. of Manuel.) As of August, 2005, plaintiff did not possess certification in Trade and Industrial Education (Code 7509). (UMF No. 20; and see doc. no. 26, Ex. no. 2, aff. of Staples, ¶ 11.) In contrast, the individual who got the ODCTE job sought by plaintiff was Mr. Johnnie Loudermilk, a white male, who had the certification required by ODCTE. (UMF No. 21.) Mr. Loudermilk is and was certified in the area of Trade and Industrial Education (Code 7509); this allows him to teach the automotive classes funded by ODCTE. (UMF No. 21, and Ex. No. 2, aff. of Staples, ¶ 13.) A form has been provided which shows Mr. Loudermilk's Code 7509 certification. (UMF No. 21, and see Ex. No. 8, form with print date of June 18, 2003.)

As has been noted, the sought-after ODCTE teaching job consisted of teaching in the automotive program. (UMF No. 17.) Prior to the 2005-2006 school year, Mr. Loudermilk had previously taught automotive services classes at Douglass High School, including auto mechanics classes prior to August of 2005. (UMF No. 9.) Prior to the 2005-2006 school year, plaintiff had taught courses including woodworking, furniture making, and welding at Douglass High School, but beginning in the 2005-2006 school year, the courses taught by plaintiff in woodworking and metal-working were eliminated at Douglass. (UMF No. 9; and see Ex. 2, Staples aff. ¶ 9, regarding demolition of vocational building upon completion of the new Douglass High School building, thereby eliminating classroom and shop space used for plaintiff's woodworking and metal-working classes.)

Despite these undisputed facts, plaintiff argues: 1) that he was qualified for the job in question; 2) that defendant previously allowed Mr. Loudermilk to teach when Mr. Loudermilk did not have proper certification and that defendant could have done the same for plaintiff; 3) that Mr. Loudermilk did not have a certificate from the state regarding completion of all courses, and did not have a license to teach from the state, but that plaintiff did; and 4) that plaintiff had a letter regarding his certification. In support of these contentions, plaintiff primarily cites his deposition testimony recounting conversations from a meeting which the deposition suggests occurred in October of 2003, nearly two years before the reassignments in question. (Doc. no. 29, response to defendant's UMF No. 20.)

Regardless of when the meeting occurred, most of the content of the conversation described by plaintiff in his deposition is hearsay. The inadmissible matters include plaintiff's deposition testimony recounting what other people at the meeting asked at the meeting, and then answered at the meeting, all of which is offered for the truth of the matters asserted regarding the teaching status of plaintiff and Mr. Loudermilk.

Even if the court were willing to overlook the hearsay problem (which it is not), the testimony does not support the contentions for which it is cited. The recounted conversation is vague regarding exactly what teaching certificates are being discussed. ODCTE certification was not specifically mentioned in the conversation, at least as recounted in the deposition. Certification to teach Trade and Industrial Education, and Code 7509 certification, also were not mentioned in the conversation as recounted by plaintiff in the cited portions of his deposition. (Doc. no. 29, response to UMF No. 20 citing Ex. 1, depo. at pp. 48-51.)

To the extent the conversation relates to Mr. Loudermilk's status, plaintiff's deposition testimony indicates that the responder's first answer to the questioner's inquiry as to whether Mr. Loudermilk was certified was that Mr. Loudermilk was

-7-

certified. (Doc. no. 29, Ex. 1, p. 50, lines 10-16.) When the questioner "reworded" the question and asked if Mr. Loudermilk "had papers, with a certificate from the state, indicating that he had completed all courses and had a license to teach in the state," the responder indicated that, "If you ask it that way, the answer is no," but the responder added, "He's working on it." (Doc. no. 29, Ex. 1, p. 50, lines 17-24.) According to plaintiff's recounting of the conversation, when the questioner asked whether plaintiff had a "teaching certificate, issued to him by the State of Oklahoma as completing all the requirements necessary to hold the position and the certificate," the responder indicated that plaintiff did have such a certificate. (Doc. no. 29, Ex. 1, p. 50, line 25 - p. 51, line 9.) Again, however, exactly which type of certificate was being referred to, and exactly what position is being referred to, is not clarified by the cited deposition testimony.

Plaintiff also cites an August 11, 2005 letter regarding his "certification" to teach "in Industrial Arts/Technology Education." (Doc. no. 29, response to UMF No. 20, citing Ex. 16.) All that letter states, however, is that plaintiff had "submitted his certification application renewal for a Standard teaching certificate in Industrial Arts/Technology Education," and that the author of the letter, ODCTE administrator, Mr. Manuel, was "in receipt of [plaintiff's] application and the steps needed to complete this process are already in progress." (Doc. no. 29, Ex. no. 16.) The letter does not indicate that plaintiff took the necessary exam or received ODCTE certification, much less that he did so prior to the beginning of the 2005-2006 school year.

Although plaintiff appears to argue that the certification issue is not credible because the district did not consistently enforce such requirements, no evidence has been identified that indicates defendant did not enforce ODCTE Trade and Industrial Division exam and certification requirements in 2005, or at any other time.

The court finds that plaintiff has failed to show any genuine issue of material fact in support of his argument that he was qualified for the sought-after job in 2005.

Plaintiff also appears to argue that the decision to select automotive courses rather than a more varied program of industrial arts for Douglass High School beginning in the 2005-2006 school year constituted race discrimination against him, because the district was trying to avoid retaining plaintiff as a teacher in the Douglass industrial arts program. As non-discriminatory reasons for its actions, defendant has presented undisputed evidence, however, that construction of a new high school building as a part of the "MAPS for Kids" project created new space restrictions for Douglass's vocational programs. (Doc. no. 26, UMF No. 9, and Ex. No. 2, aff. of Staples, and UMF No. 10, and Ex. No. 2 aff. of Staples.) Plaintiff has not identified any evidence that the space restrictions, curriculum decisions, or budget considerations cited by defendant as the underlying causes of the broad changes which affected plaintiff were merely a pretext for race discrimination against plaintiff. Defendant's specific, stated reason for not assigning plaintiff to the remaining trade and industrial arts job and assigning him, instead, to the science teaching job, is that the sought-after job was funded in 2005-2006 by ODCTE and plaintiff did not have the required certification for that job. Plaintiff has identified no evidence suggesting that defendant's stated reason for not assigning plaintiff to the sought-after trade and industrial education job was a pretext for race discrimination.

The court concludes that defendant is entitled to summary judgment on plaintiff's race discrimination claim.

## Retaliation

One of the *prima facie* elements of a retaliation claim is that a reasonable employee would have found the challenged action materially adverse. Somoza v. University of Denver, 513 F.3d 1206, 1212 (10th Cir. 2008). Petty slights, minor annoyances, and a simple lack of good manners will not deter an employee from

making or supporting a charge of discrimination, and thus are not actionable retaliation. Burlington Northern & Santa Fe Railway Company v. White, 548 U.S. 53, 67-70 (2006).

Plaintiff complains of retaliatory action consisting of: taking his keys to the building from him (although he retained keys to his classroom), being prohibited from removing personal items from the welding and wood shop, and being evaluated by the high school principal rather than by the middle school principal after he began teaching science to middle school students.[6] An element of a *prima facie* case of retaliation is that a reasonable employee would have found the challenged action materially adverse. *See*, Somoza, 513 F.3d 1212 (three *prima facie* elements of retaliation are: 1) plaintiff engaged in protected opposition to discrimination; 2) a reasonable employee would have found the challenged action materially adverse; and 3) a causal connection exists). The court finds that taking plaintiff's keys to the building is not a materially adverse action. The court also finds that being evaluated by the high school principal after being assigned to teach middle school students is not a materially adverse action.

The interrogatory answer cited by plaintiff to support the contention that plaintiff was prohibited from removing personal items from the shop area indicates this occurred after plaintiff was no longer assigned to teach in the shop area, and states that plaintiff had to use his students' resources and "his own money to get the equipment he needed to achieve his teaching goals at the shop." (Doc. no. 29, Ex. no. 3, p. 11.) It is unclear whether it was this same equipment, allegedly purchased *for*

---

[6]Although the complaint does not allege that the content of his evaluations was retaliatory, the briefing and plaintiff's deposition indicate plaintiff may contend he was evaluated in an unnecessarily harsh manner as retaliation. The evaluations, however, do not necessarily show harsher evaluations following plaintiff's assignment to teach middle school. Moreover, the evaluation completed on December 14, 2006 occurred more than a year after plaintiff filed his charge of discrimination. Accordingly, if plaintiff intended to allege that the content of the evaluations was retaliatory, defendant would be entitled to summary judgment on such a claim.

*the shop program* but with plaintiff's own funds, which constituted the equipment plaintiff alleges he was unable to get out of the shop after he was assigned to teach science. Although plaintiff claims "he believes he had several thousands of dollars worth of equipment in there," (doc. no. 29, Ex. no. 3, p. 12), plaintiff has not provided a list of items he was not allowed to retrieve, nor has he presented other evidence of the value of such items. In these circumstances, the court finds no showing has been made that defendant's refusal to allow plaintiff to retrieve personal items from the shop area was a materially adverse action.

Moreover, on an entirely separate but equally dispositive issue, the court finds that plaintiff has not identified evidence of a causal connection to support any of his retaliation claims.

Aside from the deficiencies discussed above, defendant has presented evidence of non-discriminatory reasons for its actions. In that regard, the court notes that plaintiff was evaluated better in some ways after the filing of the charge of discrimination than he was evaluated prior to the charge, and that he was evaluated by the same person for four years. (UMF 32-34.) Plaintiff has not identified evidence to show that defendant's stated reasons for disallowing plaintiff to carry keys to the building, for disallowing plaintiff's return to the shop area to recover alleged personal items, or for the high school principal conducting evaluations of plaintiff after he began teaching science, are merely a pretext for retaliation.

Finally, if plaintiff intended to press a claim that he was subjected to a hostile work environment in retaliation for having filed a charge of discrimination, plaintiff has not shown the type of severe or pervasive conditions which would alter plaintiff's work environment and which are necessary to support such a claim. *Cf.*, <u>Penry v. Federal Home Loan Bank of Topeka</u>, 155 F.3d 1257, 1261 (10th Cir. 1998) (for hostile environment claim to survive a summary judgment motion, plaintiff must show that a rational jury could find workplace permeated with discriminatory intimidation,

-12-

ridicule, and insult, sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment).

The court concludes that defendant is entitled to summary judgment on plaintiff's retaliation claim.

## Conclusion

After careful consideration of the pleadings, the record evidence, the parties' submissions, and the relevant authorities, defendant's motion for summary judgment is **GRANTED**.

Dated this 14th day of July, 2008.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

07-0233p007 rev (pub).wpd